IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2:02cv1372-T |
| ASSET RECOVERY AND MANAGEMENT TRUST, S.A., et al., | ) ) ) ) | (WO) |
| Defendants. | ) | |

**ORDER ON PRETRIAL HEARING**

A pretrial hearing was held in this case on April 20, 2005, wherein the following proceedings were held and actions taken:

1. PARTIES AND TRIAL COUNSEL

    Plaintiff:           Securities and Exchange Commission
    Trial Counsel:   Martin F. Healey
                          Asita Obeyesekere

    Defendant:       Frank R. Johnson
    Trial Counsel:   Alvin T. Prestwood
                          Tara S. Knee
                          William L. Rodgers, Jr.
                          Prestwood & Associates, P.C.
                          350 Adams Avenue

       Post Office Box 1910
       Montgomery, Alabama  36102-1910
       (334) 264-6401
       (334) 834-4954 (facsimile)

Defendant:   Carlos Fernandez Alfaro
Trial Counsel:  William Blanchard
       Marion Chartoff

Defendant:   Milton Vaughn
Trial Counsel:

Defendant:   Asset Recovery and Management Trust
Trial Counsel:

COUNSEL APPEARING AT PRETRIAL HEARING

Plaintiffs:  Securities and Exchange Commission
      Martin F. Healey
      Asita Obeyesekere

Defendants: For Frank R. Johnson:
      Alvin T. Prestwood
      Tara S. Knee
      William L. Rodgers, Jr.

      For Carlos Fernandez Alfaro:
      William Blanchard
      Marion Chartoff

      For Milton Vaughn:

      For Asset Recovery and Management

2.   JURISDICTION AND VENUE

The SEC seeks a permanent injunction and disgorgement of ill-gotten gains pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)]. The Commission seeks the imposition of civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d), 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa]. In addition, Johnson and Vaughn reside in this District.

3. PLEADINGS

A. Complaint, Answers and Summary Judgment Motions

The SEC filed a complaint in this matter. Defendants Johnson and Vaughn filed answers and amended answers. Defendant Fernandez filed a motion to dismiss the complaint, which was responded to and opposed by the SEC. Defendant Johnson filed a motion for summary judgment, which was responded to and opposed by the SEC. These motions were denied by this Court. Defendant Asset Recovery and Management Trust, S. A. ("ARM") has not filed an answer to the complaint. On December 6, 2004, the SEC filed summary judgment motions against each of the defendants. On the same date, defendants Johnson, Fernandez and Vaughn filed motions for summary judgment. All of the summary judgment motions are pending.

B. Request to Defer Summary Judgment Motions Regarding Defendant Fernandez

Defendant Fernandez retained new counsel in February. Since that time the SEC and he have engaged in settlement discussions. While no settlement agreement has been reached, the discussions have progressed such that the SEC and defendant Fernandez jointly request that the Court defer ruling on the summary judgment motion brought against Fernandez by the SEC, as well as the summary judgment motion brought by Fernandez, so that the settlement discussions may continue. The SEC does not request that the summary judgment motions against defendants Johnson, Vaughn and ARM be deferred, and will be prepared to argue those at the April 20 conference.

C. Eleventh-Hour Filings By Defendant Johnson

Discovery in this case originally closed on December 15, 2003. The Court then extended the time for completion of discovery to December 31, 2004, and then again to March 31, 2005. During those discovery periods the SEC served defendant Johnson with a request for production of documents. He declined to produce any, claiming Fifth Amendment protection. The SEC

3

propounded interrogatories to Johnson. He declined to answer, claiming Fifth Amendment protection. The SEC deposed Johnson, who declined to answer any questions claiming Fifth Amendment protection. On April 14, 2005 defendant Johnson filed materials purportedly in support of his own motion for summary judgment, and in opposition to the SEC's motion. Those materials included an affidavit by Johnson and a statement by him that he is now willing to testify at a deposition.

This is pure gamesmanship by defendant Johnson. Having delayed providing documents or answers to questions for more than two years, he now claims a willingness to testify. Allowing defendant Johnson to flout this Court's discovery orders, would only result in yet another significant delay in the progress of this case. The SEC would be entitled to have documents produced by Johnson; to have him respond to interrogatories; and, to take his deposition. After that, the SEC would be entitled to determine whether additional discovery would be necessary as a result of documents and responses received from Johnson. This would have the effect of rendering this Court's earlier discovery orders meaningless, and would delay for several months the trial in this case.

Finally, in his papers Johnson makes the remarkable claim that he asserted Fifth Amendment claims at the urging of an attorney who was representing a co-defendant in the case. At all times during these proceedings Johnson was represented by the same attorneys who presently represent him. The notion that Johnson was somehow misled by an attorney who was not representing him while the attorneys who *were* representing him sat idly by is simply ridiculous.

At the pretrial conference the SEC will be prepared to argue for the exclusion of these and any other late submissions offered by defendant Johnson.

4.  CONTENTIONS OF THE PARTIES:

The SEC contends as follows:

a) Defendants Johnson, Vaughn, Fernandez and ARM committed securities fraud and registration violations through a fraudulent "prime bank" scheme. The defendants raised more than $900,000 from hundreds of United States investors, spirited the funds to various Costa Rican banks, and ultimately appropriated it to their own use. The fraudulent scheme was developed by defendants Johnson, Vaughn and Fernandez-Alfaro, and was operated through defendant ARM.

b) The fraudulent conduct by the defendants had its genesis in a prior "prime bank" fraud scheme carried out by Johnson through the International Benevolent Fund Trust ("IBFT"). The

4

IBFT scheme targeted more than 9000 investors, who collectively lost millions of dollars between 1996 and 1999. In 1999, the Office of the United States Attorney for the Middle District of Alabama prosecuted Johnson for the IBFT fraud scheme, in the process effectively shutting down IBFT and the fraudulent conduct related to it. Johnson, Vaughn and Fernandez then developed the ARM scheme to replace and exploit the earlier fraudulent scheme.

c) The ARM scheme targeted investors who were victims of prior fraudulent schemes, including the IBFT victims. The defendants represented to these investors that ARM would assist in recovering funds they had lost as a result of those earlier schemes to defraud. In addition to these "recovery services," ARM also offered investments in its own supposed high yield, offshore trading programs, through unregistered securities which the defendants called "joint venture contracts." The defendants promised exorbitant returns on investments in these trading programs, claiming that they would have access to international trading banks, the mythical "prime banks," which they represented typically were available only to a select few with millions of dollars to invest. In fact, the "prime banks" and the trading programs were wholly fictitious, and the joint venture contracts were valueless. After luring investors with the promise of recovering lost funds, and thereby earning their trust, the defendants then enticed them into investing in ARM's trading programs. From November 1999 through July 2000 and beyond, the ARM scheme raised at least $900,000 from hundreds of investors throughout the United States. After the defendants received investors' monies they transferred it to their own use and control. At least four banks in Costa Rica were used by the defendants to receive these transfers of funds.

d) In the course of offering and selling ARM's unregistered prime bank securities, defendants engaged in numerous misrepresentations and omissions of material fact concerning, among other things, the use and safety of investor funds, as well as promised returns on their investments. Defendants represented, for example, that investors' funds would be used to trade debt instruments known as "bank debentures" and "standby letters of credit" through "world trading banks." Investors were told that this trading activity conformed to practices set forth by the International Chamber of Commerce, and would provide returns of between eight to 15 times the principal invested, with complete safety of principal. In reality, ARM's trading programs did not exist and the defendants stole the investors' monies.

e) By engaging in the conduct described in this Complaint, defendants, directly or indirectly, singly or in concert, have engaged in transactions, acts, practices, and courses of business that constitute violations of sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act")[15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] and section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

<u>The defendant Milton Vaughn contends the following</u>:

Without waiving his Fifth Amendment rights against self incrimination, defendant Milton Vaughn, pro se, adopts the filing by counsel for plaintiff and codefendants as to the witness list, document list, and deposition excerpts in this case. He acknowledges the trial date of the May 2005 term and all pending motions.

<u>The Defendant Johnson contends the following</u>:

a) On November 2, 1999, Johnson apprised IBFT investors that Asset Recovery and Management Trust (hereinafter referred to as "ARM Trust") had been hired to collect money lost by IBFT investors and attested to ARM Trust's ability to recover monies lost through those investments.

b) On December 1, 1999, Johnson terminated the contract between IBFT and ARM Trust. A response was received on or about January 12, 2000 confirming this termination. At no time was Johnson otherwise associated with ARM Trust or any of its services. Johnson did not solicit or encourage anyone to make new investments in ARM Trust or any entity associated with ARM Trust, but only sought to use ARM Trust or its associated entities to recover funds lost by IBFT investors.

c) On or about July 1, 2000, Johnson was imprisoned at Maxwell Federal Prison in Montgomery, Alabama. Defendant Johnson was released on or about August 20, 2001.

d) While he was in prison, Johnson's name appears as treasurer for various entities for a period of approximately three months. This action was not known to Defendant Johnson until this pending litigation was commenced by the Plaintiff.

e) Through the course of discovery, several investors were deposed. The investors did not know or communicate with Defendant Johnson about any new investments with ARM Trust. Two of the investors stated that Defendant Johnson only contracted or had an arms-length transactions with ARM Trust.

f) Defendant Johnson claims the following defenses:

  (a) general denial of all allegations;
  (b) false allegations;
  (c) statute of limitations;

(d) equitable doctrines of waiver, estoppel and laches;
(e) no involvement with ARM or ARM Trust at any time;
(f) denies the material averments of wrongdoings; and
(g) denies violating Securities Regulations.

g) Defendant Johnson waived his privilege against self-incrimination upon meeting with representatives from the U.S. Attorney's Office, the Alabama Securities Commission and the Federal Bureau of Investigation on March 11, 2005. It is also at this time that Defendant Johnson produced documents, other than those that the Plaintiff had previously supplied the representatives. The Defendant Johnson believes that the Plaintiff now has in its possession copies of all documents that it has requested in discovery. If it does not have such copies then Defendant Johnson will supply them.

Defendant Johnson has stated that he is willing to be deposed. It is the understanding of counsel for Defendant Johnson that the Plaintiff is willing to delay matters for co-Defendant Fernandez-Alfaro. This time might also be utilized for Defendant Johnson to be deposed.

Counsel for Defendant Johnson would like to correct any statements that may have been misleading concerning Defendant Johnson's asserting his right to claim protections under the Fifth Amendment. At the time that Defendant Johnson first invoked his Fifth Amendment privilege, Defendant Johnson was following the advice Mr. Irving Anolik who at that time was his co-counsel. Over the course of this litigation, Mr. Anolik has withdrawn from representing Mr. Johnson in this matter. Therefore, defense strategies and plans have been changed.

The Defendant Fernandez-Alfaro contends the following:

Defendant Fernandez-Alfaro contends that he did not commit and is not liable for securities fraud or selling unregistered securities. He was not aware of the "prime bank" scheme that ARM Trust allegedly operated and did not develop or participate in it. He did not sell or assist in the selling of any securities. He did not know that ARM Trust was selling securities. He did not communicate at all with investors and did not know what was communicated to investors by ARM Trust, and accordingly made no representations or omissions of any kind to investors. He did not control any investors' funds, and only transferred corporate funds when directed and paid to do so by Milton Vaughn or his associate James Huckabee. He did not obtain any investor's funds for his own use.

Defendant Fernandez-Alfaro's role in ARM Trust was limited to: performing legal work such

as registering the corporation and making corporate changes; establishing bank accounts at Mr. Vaughn's direction to assist in the startup of the corporation; and occasionally facilitating payments and transfers only when so directed and paid to do so by Milton Vaughn or his associates. Defendant Fernandez-Alfaro was named as an officer and was granted one of one hundred shares in the corporation when the corporation was formed in order to help Mr. Vaughn meet the legal requirements for incorporation. However, it is a common and legal practice for an attorney to do this for a client seeking to incorporate. Defendant Fernandez-Alfaro was an officer and shareholder in name only, and he resigned his position in the corporation and transferred his one share to Milton Vaughn as soon as the incorporation process was complete. Defendant Fernandez-Alfaro never actually acted as an officer of the corporation, and has never directed, planned or participated in the planning of any corporate activity. All of his activity related to ARM Trust was performed at the direction of Milton Vaughn or his associate James Clifton Huckabee on a fee-for-service basis, at reasonable market rates.

In sum, Defendant Fernandez-Alfaro denies the allegations of wrongdoing and asserts that his actions in relation to ARM Trust were insufficient to render him liable for any of the Plaintiff's alleged causes of action. He also asserts defenses of lack of scienter/intent, and lack of a duty to register ARM Trust's securities.

Because the only moneys Defendant Fernandez-Alfaro received from ARM Trust and Milton Vaughn were reasonable fees for services rendered to the corporation, he has no proceeds to disgorge from the alleged ARM Trust scheme.

Defendant Fernandez-Alfaro has submitted two documents in opposition to summary judgment under seal due to an earlier objection by Milton Vaughn to the admission of one of the documents on the basis of attorney-client privilege, and an anticipated objection to the other document by Vaughn on the same basis. Defendant Fernandez-Alfaro contends that attorney-client privilege does not protect these documents and that he should be allowed to use them to defend himself.

The Defendant Vaughn contends the following:

The Defendant Asset Recovery Management Trust contends the following:

5.      STIPULATIONS BY AND BETWEEN THE PARTIES:

Assuming a proper foundation is shown, the SEC will stipulate to the admission of any

documents offered by any of the defendants.

**It is ORDERED that:**

(1) **The jury selection and trial of this cause, which is to last five (5) days, are set for May 23, 2005, at 10:00 a.m., in Courtroom 2E, Frank M. Johnson, Jr. Courthouse Complex, One Church Street, Montgomery, Alabama;**

(2) **The parties are to file their pre-trial briefs, proposed jury selection questions, and proposed jury instructions by May 18, 2005;**

(3) **Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the list of his or her exhibits;**

(4) **At least three days before trial, counsel are to contact the courtroom deputy clerk about the procedures for pre-marking all trial exhibits;**

(5) **Each party shall have available a sufficient number of copies of each photostatically reproducible exhibit for each of the jurors, opposing counsel, the courtroom deputy clerk, the law clerk, and**

the judge; and

(6)     All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless an objection is noted and filed with the court within seven (7) days from the date of this order.

DONE, this the 21st day of April, 2005.

                                       /s/ Myron H. Thompson  
                                   **UNITED STATES DISTRICT JUDGE**